Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
402 W. Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

Jonathan Shub (SBN 237708)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
jshub@shublawyers.com

*Attorneys for Plaintiff and the Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAIGE VASSEUR, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>JOHNSON & JOHNSON CONSUMER, INC., a New Jersey Corporation, and KENVUE INC., a Delaware Corporation,<br><br>                Defendants. | Civil Action No.:_____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Paige Vasseur ("Plaintiff"), through her undersigned attorneys, brings this Class Action Complaint against Defendants Johnson & Johnson Consumer, Inc. and Kenvue Inc. ("Defendants"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## NATURE OF THE ACTION

1.     This action seeks to remedy Defendants' deceptive and misleading business practices with respect to the marketing and sale of the Listerine Cool Mint Antiseptic Mouthwash ("the Product") in the state of California and throughout the country.

2.     Specifically, Defendants market and sell the Product without warning consumers that regular use of the Product causes the proliferation of certain bacteria, including but not limited to *Streptococcus anginosus* (*S. anginosus*) and Fusobacterium *nucleatum* (*F. nucleatum*), each of which can cause severe invasive infections and have been closely associated with multiple potentially deadly cancers, including oral cancer, head & neck cancer, colorectal cancer, pancreatic cancer, esophageal cancer, gastro-intestinal cancer, and breast cancer.

3.     Listerine is a bactericidal mouthwash widely used to prevent oral health problems such as dental plaque and gingivitis.

4.     Defendants market and label the Product as having the ability to "kill 99% of germs that cause bad breath, plaque & gingivitis" and providing "a fresher and cleaner mouth than brushing alone."



5.    Defendant Kenvue Inc.'s website specifically directs consumers to use the product twice per day for 30 seconds.[1]

6.    Defendants provide a warning that the Product is not to be used by children under 12 years of age and that consumers should seek medical help if they swallow more than a minimum amount of the product:



_____

[1] https://www.listerine.com/mouthwash/antiseptic/listerine-cool-mint-mouthwash

CLASS ACTION COMPLAINT

7.     Unfortunately for consumers, swallowing the Product is not the only danger associated with its use.  As set forth in greater detail below, the Product, when used regularly and as intended, results in the proliferation of bacteria associated with several dangerous cancers.

8.     Defendants did not disclose the harmful nature of the Product in any of their labeling, advertising, or marketing.  Nowhere on the Product's warning label, or elsewhere, do Defendants disclose to consumers that the Product can increase the risk of dangerous cancers.

9.     Consumers, including Plaintiff, trust manufacturers like Defendants to sell products that are safe and free from harmful side effects, including the proliferation of bacteria closely linked to various cancers.

10.     Defendants specifically manufacture, sell, and distribute the Product in this manner using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers.

11.     For example, Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. Consumers expect the warnings label on the packaging to accurately disclose the health risks associated with a product.

12.     Unfortunately for consumers, Defendants' advertising and marketing campaign is false, deceptive, and misleading because nowhere on the Product's packaging or labeling do Defendants disclose that the Product leads to the proliferation of cancer-causing bacteria.

13.     Plaintiff and Class Members relied on Defendants' representations and omissions about the Product's health hazards when they purchased them.

14.     Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a mouthwash product that causes the proliferation of cancer-causing bacteria.

15.     That is because Defendants' Product, which poses a serious health risk

4

to consumers, has no value.

16.     As set forth below, mouthwash products, such as Defendants' Product, that cause the proliferation of cancer-causing bacteria are in no way safe for humans and are entirely worthless.

17.     Alternatively, Plaintiff would have never paid a premium for a mouthwash Product that was known to cause the proliferation of cancer-causing bacteria, and thus Plaintiff overpaid for the Product based on Defendants' representations and omissions.

18.     Defendants' conduct violated and continues to violate, *inter alia*, California's Unfair Competition Law § 17200 *et seq.*, California's False Advertising Law § 17500, and California's Consumer Legal Remedies Act § 1750 *et seq*. Defendants breached and continue to breach their implied warranties regarding the Product.  Defendants have been and continue to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendants to remedy these egregious business practices on behalf of herself and Class Members who purchased the Product during the applicable statute of limitations period (the "Class Period").

## PARTIES

**Plaintiff**

19.     Plaintiff Paige Vasseur is an individual consumer who, at all times material hereto, has been a citizen of California State.  Plaintiff most recently purchased the Product on or around February 2024, and has purchased the Product since approximately 2019. Prior to purchasing the Product, Plaintiff read Defendants' Product marketing and labeling.  Defendants' website and the Product labeling and packaging for the Product Plaintiff purchased failed to disclose that the Product causes the proliferation of cancer-causing bacteria when used regularly as instructed by Defendants.

20.     Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the Product's safety and health risks,

Plaintiff would not have been willing to purchase the Product. Plaintiff purchased, purchased more of, and/or paid more for, the Product than she would have had she known the truth about the Product. The Product that Plaintiff received was worthless because it has been shown to result in the proliferation of cancer-causing bacteria.

21.    Alternatively, Plaintiff paid a premium that she would have never paid had she known the Product could cause the proliferation of cancer-causing bacteria.

22.    Accordingly, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendant**

23.    Defendant Johnson & Johnson Consumer, Inc. is a New Jersey based corporation with its principal place of business at 199 Grandview Rd, Skillman, NJ. Defendant Johnson & Johnson Consumer, Inc. owned, manufactured, and distributed the Products until February 2022, when it spun off its Consumer Healthcare division into a separate company, Kenvue Inc.

24.    Defendant Kenvue Inc. is a Delaware based corporation with its principal place of business at 199 Grandview Rd., Skillman, NJ.  Defendant Kenvue Inc. owned, manufactured, and distributed the Products after February 2022.

25.    During the Class Period, Defendants have manufactured, marketed, advertised, and distributed the Product throughout the United States.  Defendants created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Product.

## JURISDICTION AND VENUE

26.    This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d).   The amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, there are more than 100 Class members, and Plaintiff is a citizen of the state of California, and Defendants are citizens of New Jersey.

27.    This Court has personal jurisdiction over Defendants in this matter

because Defendants conduct (or conducted) and transact business in the state of California, contract to supply goods within the state of California, supply goods within the state of California, Defendants intentionally availed themselves of the laws and markets of California, and Defendants intentionally placed the Product into the stream of commerce directed at California.

28.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff suffered injury as a result of Defendants' acts in this district, many of the acts and transactions giving rise to this action occurred in this District, Defendants transact or transacted business and/or have agents within this District and have intentionally availed themselves of the laws and markets within this district.

## **FACTUAL ALLEGATIONS**

29.    The oral rinse/mouthwash market is a fast-growing, competitive, and lucrative industry, with market size that was valued at USD 6.51 billion in 2021 and is expected to expand at a compound annual growth rate of 7.1% from 2022 to 2030.[2] The market is expected to reach USD 15.7 billion by 2022–2032. The increasing focus on oral health, rising consumer disposable income, and product innovations are driving market expansion.[3]

30.    Oral rinse manufacturers, including Defendants, tout the health benefits of therapeutic mouthwash, including killing germs and reducing plaque and gingivitis.

31.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product has dangerous side effects, especially at the

---

[2] https://www.grandviewresearch.com/industry-analysis/oral-rinse-market-report#:~:text=The%20global%20oral%20rinse%20market,7.1%25%20from%202022%20to%202030.

[3] https://www.dentistrytoday.com/mouthwash-market-envisions-reaching-us-15-7-billion-by-2032/#:~:text=The%20global%20Mouthwash%20market%20is,innovations%20are%20driving%20market%20expansion.

7

point of sale, and therefore must and do rely on Defendants to truthfully and honestly report any health hazards associated with the Product on the Product's packaging or labels.

32.    While Defendants warn against the use of the Product by children and against swallowing the Product, the Product's packaging does not warn that it can cause the proliferation of certain bacteria associated with deadly cancers. This leads reasonable consumers to believe the Product is safe to use as directed on a daily basis.

33.    If anything, Defendants' labeling suggests the opposite. Defendants label the Product as having the ability to "kill 99% of germs that cause bad breath, plaque & gingivitis." Germs are a broad category of microscopic living things that can cause disease, including bacteria, viruses, fungi, and protozoa. Accordingly, by stating that the Product contains ingredients which will "kill 99% of germs" associated with common oral ailments, a reasonable consumer would understand that it would eliminate most harmful bacteria in one's mouth. Unfortunately for consumers, daily use of the Product, as recommended by Defendants, does the opposite—it has been shown to cause the proliferation of *more* bacteria associated with multiple deadly cancers.

34.    A recent study found that after three months of normal use, Listerine Cool Mint greatly affected the microbiome composition.[4] Specifically, after the three-month period, *F. nucleatum* and *S. anginosus* were found to be significantly more abundant than at the measured baseline of patients.[5]

35.    *Fusobacterium nucleatum* is a bacteria that is closely associated with oral cancer, head & neck cancer, colorectal cancer, pancreatic cancer, esophageal

---

[4] The effect of daily usage of Listerine Cool Mint mouthwash on the oropharyngeal microbiome: a substudy of the PReGo trial, National Library of Medicine, https://pubmed.ncbi.nlm.nih.gov/38833520/.

[5] *Id.*

cancer, and breast cancer.[6] Studies have been conducted that closely link this particular bacteria with colorectal cancers, but also link oral concentration of this bacteria with prediction of colon cancer prognosis.[7] Additionally, these bacteria have been shown to survive longer than other bacteria under acidic conditions, like those found in the gut, which suggests that they may travel from the mouth to the gut through the digestive tract.[8] These articles, when taken together, implicate *F. nucleatum* with every stage of colon cancer and show that this bacteria both increases as prognosis worsens exacerbating cancer progression through influence of the microenvironment.

36.    *S. anginosus* has been linked to gastro-intestinal cancer and in rare cases colorectal cancer.[9] Additionally, both *S. anginosus* and *F. nucleatum* were

---

[6] Fusobacterium nucleatum and cancer, National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9315032/.

[7] The Potential of Colonic Tumor Tissue Fusobacterium nucleatum to Predict Staging and Its Interplay with Oral Abundance in Colon Cancer Patients, National Library of Medicine, https://pubmed.ncbi.nlm.nih.gov/33804585/.

Fusobacterium nucleatum promotes colorectal cancer metastasis through miR-1322/CCL20 axis and M2 polarization, National Library of Medicine, https://pubmed.ncbi.nlm.nih.gov/34632963/.

Fusobacterium nucleatum-induced imbalance in microbiome-derived butyric acid levels promotes the occurrence and development of colorectal cancer, National Library of Medicine, https://pubmed.ncbi.nlm.nih.gov/38681125/.

[8] Scientists Link a Single Type of Bacteria to Colorectal Cancer, National Cancer Institute, https://www.cancer.gov/news-events/cancer-currents-blog/2024/colorectal-cancer-fna-c2-bacteria.

[9] Streptococcus anginosus promotes gastric inflammation, atrophy, and tumorigenesis in mice, Science Direct, https://www.sciencedirect.com/science/article/pii/S0092867424000060.

The Clinical View on Streptococcus anginosus Group – Opportunistic Pathogens Coming Out of Hiding, National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9309248/.

Colorectal Cancer Associated with Streptococcus anginosus Bacteremia and Liver Abscesses, National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5216235/.

found to be predominant in patients suffering from oral squamous cell carcinoma.[10]

37.    Through the proliferation of these bacteria, oral dysbiosis occurs that has downstream effects that are both understood and currently being studied.[11]   The general consensus in published literature is that the oral and gastrointestinal microbiomes play a significant role in a variety of cancers that are established, promoted, and protected by imbalances of bacteria.[12]

38.    The Product's labels do not inform and/or warn the consumer that the Product causes the proliferation of bacteria associated with various cancers.  Instead, these labels suggest that the Product would "kill 99%" of these types of germs (which include harmful *F. nucleatum* and *S. anginosus* bacteria).  Accordingly, the Product's labeling misleads consumers, makes partial representations that are misleading, and/or omits material information.

39.    Defendants' false, misleading, and deceptive misrepresentations and omissions regarding the ingredients of the Product are likely to continue to deceive and mislead. Defendants' concealment was material and intentional because people are concerned with the health effects of products that they are putting onto and into their bodies.  Indeed, consumers that use the Product do so to prevent oral disease and kill harmful bacteria, not to increase such harmful bacteria's prevalence in their mouth.

40.    Defendants' concealment is doubly misleading because the fact concealed relates to the proliferation of harmful bacteria, and Defendants make

---

[10] Salivary microbiome profiles of oral cancer patients analyzed before and after treatment, National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10403937/.

[11] Scientists Link a Single Type of Bacteria to Colorectal Cancer, National Cancer Institute, https://www.cancer.gov/news-events/cancer-currents-blog/2024/colorectal-cancer-fna-c2-bacteria.

[12] Gut dysbiosis: Ecological causes and causative effects on human disease, National Library of Medicine, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC10722970/.

affirmative statements clearly promising consumers that the Product will "kill 99%" of bacteria.

41.    Consumers such as Plaintiff and the Class Members are influenced by labels and warnings on products, as well as the lack of such warnings.  Defendants knew that if they had not omitted that the Product causes the proliferation of cancer-causing bacteria, and not misrepresented that the Product would kill such bacteria, Plaintiff and the Class would not have purchased the Product at all or paid less for it.

42.    Defendants have not recalled the Product, and upon information and belief, continue to omit any warning with respect to cancer-causing bacteria on the Product's labels.

43.    Plaintiff brings claims under various state consumer and warranty theories and is not seeking to enforce any federal statute or regulation; however, much of the conduct giving rise to Plaintiff's claims was likewise in violation of the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301, et seq. ("FDCA") and its implementing regulations.

44.    The Product is an over-the-counter drug regulated by the U.S. Food and Drug Administration ("FDA").  It is therefore subject to the FDCA and its implementing regulations. These include, *inter alia*, the FDCA's provisions regarding misbranded drugs, adulterated drugs, and nonprescription over-the-counter ("OTC") drugs that may be marketed without an approved drug application. 21 U.S.C. §§ 351, 352, 355h.

45.    Under the FDCA and its implementing regulations, Defendants' Product constitutes a misbranded drug, adulterated drug, and/or unapproved new drug that does not meet the general requirements for nonprescription drugs to be marketed without an approved application.

46.    The manufacture of any misbranded or adulterated drug is prohibited under federal law. 21 U.S.C § 331(g).  And the introduction or delivery for

introduction into interstate commerce (or receipt thereof) of any misbranded or adulterated drug is prohibited under federal law. 21 U.S.C. § 331(a), (c). Further, the introduction or delivery for introduction into interstate commerce of a purported nonprescription OTC drug that fails to meet the OTC drug requirements is prohibited under federal law. 21 U.S.C §§ 355(a) and 331(d).

47.    Defendants' Product is 'misbranded' under 21 U.S.C. § 352 and the relevant regulations.

48.    It is similarly misbranded under the applicable regulations, which state, in part, that an OTC drug "is generally recognized as safe and effective and is not misbranded if it meets each of the conditions contained in [21 C.F.R. §§ 330.1 – 330.15] and each of the conditions contained in any applicable monograph." 21 C.F.R. § 330.1. The general regulations also incorporate the statutory language, providing that a drug is misbranded where it is not "labeled in compliance with chapter V of the Federal Food, Drug, and Cosmetic Act[.]" 21 C.F.R. § 330.1(c)(1).

49.    21 U.S.C. § 352(a)(1) provides that a drug shall be deemed to be misbranded under the FDCA if, *inter alia*, "its labeling is false or misleading in any particular." Further, "[i]f an article is alleged to be misbranded because the labeling…is misleading, then in determining whether the labeling…is misleading there shall be taken into account (among other things) not only representations made or suggested by statement [or] word,…but also the extent to which the labeling…fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article…under such conditions of use as are customary or usual." 21 U.S.C. § 321(n). Here, Defendants have violated 21 U.S.C. § 352(a)(1) rendering the Product "misbranded."

50.    The Product's labeling (on the warning label or otherwise) fails to reveal that use of the Product results in the proliferation of cancer-causing bacteria. This absence of this disclosure conveys that it is not possible that the Product is

linked to cancer-causing bacteria, which recent research has proved demonstrably false.

51.     The omission that the Product's use causes the proliferation of cancer-causing bacteria is a material fact for any consumer item, and especially so for a product that is purchased for the purposes of promoting health, preventing disease, and is to be used twice daily per Defendants' instructions.  This omission is doubly misleading because it pertains to the proliferation of harmful bacteria, and Defendants' labeling makes affirmative statements promising consumers that the Product will "kill 99%" of bacteria.

52.     Defendants' omission also violates 21 CFR § 201.80(e), which requires a manufacturer to revise its label "to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug",  § 314.80(b) which places the responsibility for post-marketing surveillance on the manufacturer, and 73 Fed.Reg. 49605   which mandates that "manufacturers continue to have a responsibility under Federal law ... to maintain their labeling and update the labeling with new safety information."

53.     Accordingly, federal regulations not only allow, but require manufacturers to provide additional warnings regarding health risks when they become aware of such risks associated with their products.

54.     Defendants tout the extensive clinical testing of the Product. Not only for its effectiveness, but also for its safety.  In particular, Defendants claim that "Listerine® antiseptic is the most extensively tested OTC mouthwash" and that it had been "examined in more than 50 clinical trials more than 30 of which lasted 6 months or longer."[13] Defendants further tout the  "proven safety and tolerability of Listerine® in clinical studies" and represents that "as powerful as LISTERINE® is, its safety is supported by fifteen 6-month studies conducted over a 20 year period in

---

[13] https://www.listerineprofessional.ca/the-science-of-listerine/attack-plaque/safety-and-efficacy

3203 subjects."[14]

55.     Upon information and belief, based on Defendants' extensive testing of the safety and health consequences of the Product, Defendants are, or should reasonably have been aware of, the potential harmful effects of bacteria that proliferates with normal use of Listerine.

56.     At minimum, Defendants became aware of the health risks of the Product in June 2024 when, as set forth above, a scientific study finding that Listerine causes the proliferation of cancer-causing bacteria Listerine was published, and widely reported.

57.     Moreover, despite federal regulations requiring Defendants to update their labeling with known health risks, upon information and belief, Defendants have not placed any warnings on the Product's packaging regarding the proliferation of cancer-causing bacteria.

58.     Consumers rely on marketing and information in making purchasing decisions.  By marketing the Product as "kill[ing] 99%" of bacteria and by placing that representation in a prominent location on the Product's labeling throughout the Class Period, Defendants acknowledge that this claim is material to consumers. Nowhere on its labeling, marketing, or advertising of the Product do Defendants disclose the harmful nature of the Product.

59.     Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

60.     Plaintiff and the Class Members reasonably relied to their detriment on Defendants' misleading representations and omissions.

61.     Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and

---

[14] *Id.*

the general public, as they have already deceived and misled Plaintiff and the Class Members.

62.    As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class Members in that they:

a.    Paid a sum of money for a Product that was not what Defendants represented;

b.    Paid a premium price for a Product that was not what Defendants represented;

c.    Were deprived of the benefit of the bargain because the Product they purchased was different from what Defendants warranted; and

d.    Were deprived of the benefit of the bargain because the Product they purchased had less value than what Defendants represented.

63.    Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Product they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Product.

64.    Plaintiff and the Class Members paid for a Product that was safe. Since the Product poses serious health risks, the Product Plaintiff and the Class Members received was worth less than the Product for which they paid.

65.    Plaintiff and the Class Members all paid money for the Product; however, Plaintiff and the Class Members did not obtain the full value of the advertised Product due to Defendants' misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Product than they would have had they known the truth about the Product. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

66.     Plaintiff and Class Members read and relied on Defendants' Product labeling and purchased Defendants' Product based thereon.  Had Plaintiff and Class Members known the truth about the Product, i.e., that it results in the proliferation of cancer-causing bacteria, they would not have been willing to purchase it at any price, or, at minimum, would have paid less for the Product.

67.     Defendants failed to disclose that the Product has been linked to an increased risk of various cancers. If Defendants had disclosed to Plaintiff and proposed Class Members the harmful nature of the Product, Plaintiff and Class Members would not have purchased Defendants' Product or they would have paid less for it.

68.     At all relevant times, Defendants have marketed their Products in a consistent and uniform manner.  Defendants sell the Products in all 50 states on their website and through various distributors and retailers across the United States.

## TOLLING AND ESTOPEL OF STATUTE OF LIMITATIONS

69.     Defendants have actual knowledge that their Product poses a risk of harm to human health by causing the proliferation of cancer-causing bacteria.

70.     Although Defendants were aware of the deception in their advertising, marketing, packaging, and sale of the Product, they took no steps to disclose to Plaintiff or Class Members that their Product causes the proliferation of cancer-causing bacteria.

71.     Despite their knowledge, Defendants have negligently misrepresented the Product as having qualities and characteristics it does not, while concealing the fact that their Product causes the proliferation of cancer-causing bacteria.

72.     Defendants made, and continue to make, affirmative false statements and misrepresentations to consumers, and continue to omit the fact that the Product causes the proliferation of cancer-causing bacteria, to promote sales of their Product.

73.     Defendants misrepresented, concealed, and otherwise omitted material facts that would have been important to Plaintiff and Class Members in deciding

whether to purchase the Product. Defendants' misrepresentations and omissions were known, and they intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members. Accordingly, Plaintiff and Class Members reasonably relied upon Defendants' misrepresentations and concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

74. The defects in the design and/or manufacture of Defendants' Product were not reasonably detectible to Plaintiff and Class Members.

75. At all times, Defendants actively and intentionally misrepresented the qualities and characteristics of the Product, while concealing that the Product causes the proliferation of cancer-causing bacteria. Accordingly, Plaintiff's and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

76. Defendants' statements, words, and acts were made for the purpose of deceiving the public and suppressing the truth that the Product causes the proliferation of cancer-causing bacteria.

77. Defendants misrepresented the Product and concealed that it causes the proliferation of cancer-causing bacteria for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

78. As a result of Defendants' intentional misrepresentations and active concealment of and/or failure to inform Plaintiff and Class Members that the Product causes the proliferation of cancer-causing bacteria, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statutes of limitations in light of their intentional misrepresentations and active concealment.

79. Further, the causes of action alleged herein did not occur until Plaintiff and Class Members discovered that the Product causes the proliferation of cancer-causing bacteria. Plaintiff and Class Members had no realistic ability to discern that the Product causes the proliferation of cancer-causing bacteria until they learned as much from the study described herein. In either event, Plaintiff and Class Members

were hampered in their ability to discover their causes of action because of Defendants' active concealment of the true nature of the Product.

## CLASS ALLEGATIONS

80.   Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices.  Defendants' customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.  The Class is defined as:

> All consumers who purchased the Product anywhere in the United States, for personal or household use, during the Class Period (the "Class").

Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of:

> All consumers who purchased the Product in the state of California, for personal or household use, during the Class Period (the "California Subclass").

81.   The Class and California Subclass shall be referred to collectively throughout the Complaint as the Class.

82.   The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

83.   <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the California Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

84.   <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.   Whether Defendants are responsible for the conduct alleged herein

which was uniformly directed at all consumers who purchased the Product;

b.   Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of their Product;

c.   Whether Defendants made false and/or misleading statements or omissions to the Class and the public concerning the contents of their Product;

d.   Whether Defendants' false and misleading statements or omissions concerning their Product were likely to deceive the public;

e.   Whether Defendants breached any implied warranties in marketing an unsafe mouthwash;

f.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

85.   <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Product.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

86.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

87.   <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only

individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

88.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendants' uniform false advertising to purchase their Product.

89.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I
### Violations of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq.  ("UCL")
### (On Behalf of Plaintiff and California Subclass)

90.    Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs as though set forth fully herein.

91.    Plaintiff brings this claim individually and on behalf of all members of the Class against Defendants.

92.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

93.    Plaintiff, the Class members, Johnson & Johnson, and Kenvue Inc. are each a "person" under California Business Professions Code § 17201.

**Fraudulent**

94.    Defendants made misrepresentations on the Product's label regarding the Product's ability to kill germs.  Additionally, despite such representations, Defendants failed to disclose that the Product causes the proliferation of germs, including cancer-causing bacteria (or risk of proliferation of cancer-causing bacteria).  Such misrepresentations and omissions are likely to deceive the public.

**Unlawful**

95.    Defendants' failure to disclose that the Product causes the proliferation of cancer-causing bacteria (or risk of proliferation of cancer-causing bacteria) violates at least the following laws:

   a.    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

   b.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

   d.    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 109875 et seq.

**Unfair**

96.    Defendants committed unfair practices by selling the Products without adequate warnings that the Product causes the proliferation of cancer-causing bacteria, despite representation it can "kill" the vast majority of harmful germs.

97.    Defendants' conduct with respect to the packaging and sale of the Products was unfair because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of Defendants' conduct, if any, does not outweigh the gravity of the harm to their victims.

98.    Defendants' conduct with respect to the packaging and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

99.    Defendants were obligated to disclose the conditions created by the Product because:

   a.    Defendants had exclusive knowledge that the Product caused the proliferation of cancer-causing bacteria that was not known or reasonably accessible to Plaintiff and the Class and concealed such information; and

   b.    Defendants made partial representations regarding the Product's germ-killing properties without disclosing that it causes the proliferation of

harmful bacteria, which is material to reasonable consumers; and

    c.    the omitted information relates to an unreasonable safety hazard.

100.   Plaintiff and the Class members relied upon the Product's packaging provided to them by the Defendants when making their decisions. Had Plaintiff and the Class members known Defendants failed to disclose that the Product causes the proliferation of cancer-causing bacteria on the Product's packaging, they would not have purchased the Product.

101.   In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

102.   Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Product in the future if she can be assured that the Product is safe for use and will not cause the proliferation of cancer-causing bacteria.

103.   As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received moneys, including but not limited to money from Plaintiff and California Subclass Members who paid for the Product, which was not delivered as advertised.

104.   Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

105.   Plaintiff and California Subclass Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by

Defendants and by means of their deceptive or misleading representations, including monies already obtained from Plaintiff and California Class Members as provided for by the California Business and Professions Code § 17200.

## COUNT II
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of Plaintiff and the California Subclass)**

106.   Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

107.   Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

108.   California's FAL prohibits any statement or omission in connection with the sale of good "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

109.   As set forth herein, Defendants made misleading statements and failed to disclose that the Product causes the proliferation of cancer-causing bacteria (or risk of proliferation of cancer-causing bacteria) is likely to deceive the public.

110.   Defendants knew the Product caused the undisclosed proliferation of cancer-causing bacteria. Defendants were obligated to disclose the conditions created by the Product because:

a.   Defendants had exclusive knowledge that the Product caused the proliferation of cancer-causing bacteria that was not known or reasonably accessible to Plaintiff and the Class and concealed such information; and

b.   Defendants made partial representations regarding the Product's germ-killing properties without disclosing that it causes the proliferation of harmful bacteria, which is material to reasonable consumers; and

c.   the omitted information relates to an unreasonable safety hazard.

111.   Defendants knew or should have known that these misrepresentations

and omissions were misleading to reasonable consumers.

112.   Had Defendants disclosed that the Product caused the proliferation of cancer-causing bacteria (or risk of proliferation of cancer-causing bacteria) or made consumers aware of their failure to disclose, Plaintiff and members of the Class would not have purchased the Product.

113.   Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase the Product in the future if she can be assured that the Product does not cause the proliferation of cancer-causing bacteria.

114.   As a direct and proximate result of Defendants' actions, as set forth herein, Defendants have received moneys, including but not limited to money from Plaintiff and California Subclass Members who paid for the Product, which was not delivered as advertised.

115.   Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Indeed, restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

116.   Plaintiff and California Subclass Members seek injunctive relief, restitution, and disgorgement of any monies wrongfully acquired or retained by Defendants and by means of their deceptive or misleading representations, including monies already obtained from Plaintiff and California Class Members as provided for by the California Business and Professions Code § 17500.

## COUNT III

### Violation of California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Subclass)

117.   Plaintiff realleges and incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

118.   Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendants.

119.   Plaintiff, the Class members, and Defendants are each a "person" under the Legal Remedies Act, Cal. Civ. Code § 1761(c).

120.   Plaintiff and Class members are "consumers" under the Legal Remedies Act, Cal. Civ. Code § 1761(d).

121.   The Product is "goods" as that term is defined in the California Civil Code § 1761(a).

122.   Defendants' conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

    a.  California Civil Code § 1770(a)(5): representing that the Product has characteristics, uses, benefits, or quantities that they do not have;

    b.  California Civil Code § 1770(a)(7): representing that the Product was of a particular standard, quality, or grade, when it was of another; and

    c.  California Civil Code § 1770(a)(9): advertising the Product with intent not to sell them as advertised.

123.   The omissions were material as reasonable consumers such as Plaintiff and the members of the Class would deem the proliferation of cancer-causing bacteria important in determining whether to purchase the Product.

124.   Defendants were obligated to disclose that the Product causes proliferation of cancer-causing bacteria because:

    a.   Defendants had exclusive knowledge that the Product caused the proliferation of cancer-causing bacteria that was not known or reasonably

accessible to Plaintiff and the Class and concealed such information; and

b.    Defendants made partial representations regarding the Product's germ-killing properties without disclosing that it causes the proliferation of harmful bacteria, which is material to reasonable consumers; and

c.    the omitted information relates to an unreasonable safety hazard.

125.   As a direct and proximate result of these violations, Plaintiff and the members of the Class have been harmed, and such harm will continue unless and until Defendants are enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Products.

126.   On September 3, 2024, counsel of Plaintiff and the Class members sent Defendants written notice (via U.S. certified mail, return receipt requested) that their Product is in violation of the CLRA.

127.   Defendants failed to provide appropriate relief for their violations of the CLRA § 1770(a)(5), (7), and (9) within thirty days of receipt of Plaintiff's notification. In accordance, with CLRA § 1782(b), Plaintiff and the Class are entitled, under CLRA § 1780, to recover and obtain the following relief for Defendants' violations of CLRA § 1780(a)(5), (7), and (9): actual damages under CLRA § 1780(a)(1); restitution of property under CLRA § 1780(a)(3); punitive damages under CLRA § 1780(a)(4); any other relief the Court deems proper under CLRA § 1780(a)(5).

128.   Plaintiff seeks an award of attorneys' fees pursuant to, *inter alia*, California Civil Code § 1780(c) and California Code of Civil Procedure § 1012.5.

### COUNT IV
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

129.   Plaintiff repeats and realleges every allegation set forth in the foregoing paragraphs as if fully set forth herein.

27

130.    Plaintiff, on behalf of themselves and consumers nationwide, bring a claim for unjust enrichment.

131.    This count is plead in the alternative, insofar as Plaintiff does not have an adequate remedy at law.

132.    Regardless of whether the label contained a disclosure that the Product causes the proliferation of cancer-causing bacteria or not, Defendants should have never sold the Product (and was actually legally precluded therefrom) inasmuch as the Product was unsafe.

133.    As a result of Defendants' selling the Product, Defendants received a benefit which was conferred upon it by Plaintiff and the Classes (and/or at their expense), and it is unjust for Defendants to retain that benefit.

134.    Further and/or in the alternative to the theory espoused in the preceding two paragraphs, despite the serious risks of harm inherent in exposing consumers to a Product that causes the proliferation of cancer-causing bacteria, Defendants have not disclosed these risks, and in fact has actively obfuscated the dangers of the Product by promising consumers the Product is safe.

135.    Plaintiff and Class members would not have bought the Product if they had known the Product caused the proliferation of cancer-causing bacteria.

136.    As a result of Defendants' illegal, unfair, and/or deceptive marketing and labeling of their Product, Defendants receive a benefit which was conferred upon them by Plaintiff and the Classes (and/or at their expense), and it is unjust for Defendants to retain that benefit.

137.    Under the circumstances, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits that it received from Plaintiff and Class members.

138.    Thus, it is unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiff and Class members.

1
2

## <u>COUNT V</u>
## FRAUDULENT CONCEALMENT/FRAUDULENT NONDISCLOSURE
### (On Behalf of Plaintiff and All Class Members)

3
4

139.   Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if fully set forth herein.

5
6
7

140.   Defendants concealed and failed to disclose on the Product's packaging and labeling the material fact that the Product causes the proliferation of cancer-causing bacteria, and/or that the Product was not safe or healthy for use.

8
9

141.   Defendants have knowledge that the Product caused the proliferation of cancer-causing bacteria, and that the Product was not safe or healthy for use.

10
11
12

142.   Defendants have a duty to disclose that the Product caused the proliferation of cancer-causing bacteria, and that the Product was not safe or healthy for use.

13
14
15
16

143.   Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and Class Members would rely upon the representations and omissions of Defendants regarding health effects of their Product.

17
18
19

144.   Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains causes the proliferation of cancer-causing bacteria, especially at the point of sale.

20
21
22

145.   Defendants' concealment was material and intentional because people are concerned with the health effects of the products that they are putting onto and into their bodies.

23
24

146.   Consumers such as Plaintiff and the Class Members are influenced by warnings (or lack thereof) on the products they buy.

25
26
27
28

147.   Defendants know that if they had not omitted that the Product caused the proliferation of cancer-causing bacteria, then Plaintiff and the Class would not have purchased the Product at all or paid a premium for it; however, Defendants wanted to increase sales and profits.

148. In purchasing the Product, Plaintiff and the other members of the Class justifiably relied on Defendants to disclose the health effects of the Product, including that it causes the proliferation of cancer-causing bacteria.

149. Defendants' concealment misled Plaintiff and the Class as to the true nature of what they were buying and putting onto and into their bodies.

150. Defendants fraudulently concealed that the Product causes the proliferation of cancer-causing bacteria, and that the Product was not safe or healthy for use.

151. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial

## COUNT VI
### Breach of Implied Warranty of Merchantability
### (On Behalf of the National Class or, in the alternative, the California Subclasses)

152. Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

153. Plaintiff brings this claim individually and on behalf of the members of National Class and the California Subclass against Defendants.

154. Defendants, through their acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class Members that, among other things, the Products would kill 99% of harmful bacteria and that the Products were safe to use as a mouthwash.

155. Plaintiff and the Class Members bought the Products manufactured, advertised, and sold by Defendants, as described herein.

156. Defendants are a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class Members, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

157. Plaintiff and the Class Members purchased the Products manufactured

and marketed by Defendants by and through Defendants' authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Defendants' contracts with authorized sellers, or eventual purchasers when bought from a third party. Defendants knew or had reason to know of the specific use for which the Products were purchased.

158.   However, Defendants breached the implied warranty of merchantability in that the Products do not comport with their label claims and are not safe to use as a germ-killing mouthwash.

159.   As an actual and proximate result of Defendants' conduct, Plaintiff and the Class Members did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to promises and affirmations made on the container or label of the Products nor are they fit for their ordinary purpose of providing the benefits as promised.

160.   Plaintiff and the Class Members have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' purchase prices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendants as follows:

A.   Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the class representatives, designating the undersigned as class counsel, and requiring Defendants to bear the costs of class notice;

B.   An order enjoining Defendants from selling the Product until the Product no longer causes the proliferation of cancer-causing bacteria or full disclosure of the result of same appears on all packaging;

C.   An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive

1    relief, such as recalling the existing Product;

2    D.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

E.    An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgement interest thereon;

F.    An order requiring Defendants to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

G.    An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

H.    An order requiring Defendants to pay punitive damages on any count so allowable;

I.    An order awarding attorneys' fees and costs to Plaintiff and the Classes; and

J.    An order providing for all other such equitable relief as may be just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

Dated: September 3, 2024

Respectfully Submitted,

By: */s/ Trenton R. Kashima*
Trenton R. Kashima (SBN 291405)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
402 W. Broadway St., Suite 1760
San Diego, CA 92101
Tel: (619) 810-7047
tkashima@milberg.com

Alex Straus (SBN 321366)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Ste. PH
Beverly Hills, CA 90212
Tel: (866) 252-0878
Fax: (865) 522-0049
astraus@milberg.com

Nick Suciu III*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313)303-3472
nsuciu@milberg.com

Jonathan Shub (SBN 237708)
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Tel: (610) 477-8380
jshub@shublawyers.com

Jason P. Sultzer, Esq.*
Philip J. Furia, Esq.*
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com

*\* Pro Hac Vice Forthcoming*

*Counsel for Plaintiff and the Class*

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# AFFIDAVIT OF PAIGE VASSEUR

I, Paige Vasseur, declare as follows:

1.    I am the Plaintiff in the referenced case and specifically the Plaintiff in the Cause of Action for Violations of the Consumer Legal Remedies Act.  I am a competent adult, over eighteen years of age, and a resident of the State of California. I am making this declaration in support of my Class Action Complaint.

2.    I purchased the Listerine Cool Mint Antiseptic Mouthwash in Valencia, California in or around February 2024. As such, the transaction which gives rise to this complaint occurred within Los Angeles County. Additionally, Defendant advertises and retails the Listerine Cool Mint Antiseptic Mouthwash in Los Angeles County, thus Defendant conducts substantial business within this County.

3.    Accordingly, pursuant to California Code of Civil Procedure, section 1780, Central District of California is the proper venue for Plaintiff's California Consumer Legal Remedies Act claims.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on ___8/30/2024___ in ___Valencia, California___.

Signed by:

007E9AD889934B7

Paige, Vasseur

CLASS ACTION COMPLAINT